[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court on plaintiffs' petition for declaratory relief pursuant to Rhode Island General Laws 1956 (1985 Reenactment) § 9-30-1 through 9-30-16.
An agreed statement of facts were filed and are as follows. Joseph A. Andrews and Elizabeth A. Andrews (hereinafter "plaintiffs") own a mobile home located in Parkside Terrace Mobile Home Park (hereinafter "Parkside") in Pawtucket, Rhode Island. Plaintiffs have resided in Parkside for approximately 20 years pursuant to a lease agreement. Lessors, Arthur G. Brown and Beverly G. Brown (hereinafter "defendants"), have done and continue to do business as Parkside Terrace Mobile Home Park, Pawtucket, Rhode Island.
In August 1987, plaintiffs installed a new roof on their mobile home. The plaintiffs have put a 336 sq. ft. addition on their home increasing the total width of the house from 12 feet to 24 feet.
On or about August 1, 1989, pursuant to the Rhode Island Mobile and Manufactured Home Act, defendants properly instituted a new set of Rules and Regulations for the tenants of Parkside. The two standards in issue under the Parkside Rules and Regulations are as follows:
 2. A pitched shingled roof in good condition and repair; . . .
 5. A minimum width of fourteen (14) feet for a single mobile home unit; . . .
Standards 2 and 5 are two of ten standards which must be met to allow a mobile home, upon its sale, to become eligible to remain in Parkside.
Pursuant to the Parkside Rules and Regulations, the plaintiffs, desirous of selling their home, notified the defendants of this intent. The defendants responded by telling the plaintiffs that their home would have to be removed from Parkside upon its sale because it failed to comply with Standards 2 and 5. The parties agree that the plaintiffs mobile home is in violation of both standards.
Plaintiffs bring this action against the defendants demanding judgment declaring their rights with regard to whether the roof and minimum width requirements of a mobile home park are outside the scope of Rhode Island General Laws 1956 (1982 Reenactment) §31-44-4(f)(4), which allows park owners to refuse to allow a mobile home to stay in the park. Plaintiffs further seek a restraining order prohibiting defendants from seeking to prevent plaintiffs from selling their home or from seeking to prevent a purchaser from remaining in Parkside on the grounds that the home is in violation of Standards 2 and 5.
The issue at bar is whether Standards 2 and 5 of the Parkside Rules and Regulations are valid and reasonable under the Rhode Island Mobile and Manufactured Home Act. Plaintiffs contend that Standards 2 and 5 are not reasonable; therefore, defendants should be enjoined from preventing a purchaser from leaving the home in Parkside. For the following reasons this Court finds in favor of the defendants.
Rhode Island General Laws 1956 (1982 Reenactment) § 31-44-3
sets forth rules and regulations for all mobile and manufactured home parks and provides, in pertinent part:
 (1) A mobile and manufactured home park [owner] may promulgate reasonable rules and regulations which shall specify standards for mobile and manufactured homes in the park . . .
 . . .
 (3) Any rule . . . which does not apply uniformly to all mobile and manufactured home residents of a similar class shall create a rebuttable presumption that such rule . . . is unreasonable.
This statute empowers the park owners to implement rules and regulations for mobile and manufactured home standards in their own park. Additionally, a rebuttable presumption of unreasonableness arises if the rules do not apply uniformly to all park residents.
Plaintiffs argue that neither Standard 2 nor 5 is lawful and that both violate the provisions of the Rhode Island Mobile and Manufactured Home Act. First, defendants respond by arguing that Standard 2, which calls for a "pitched shingle roof," is valid because they determined that such a roof requires less maintenance, lasts longer, is better built, and is standard on all new mobile homes. Similarly, defendants argue that Standard 5, the 14 foot minimum width requirement, is equally valid since it is also standard on new mobile homes, and it will help develop uniformity in the park. It is important to stress that these rules apply uniformly to all Parkside residents; consequently, the presumption of unreasonableness does not arise. Since the standards are neither discriminatory nor unreasonable in light of the statutory guidelines set forth by Rhode Island General Laws, this Court finds that neither standard violates the provisions of the Rhode Island Mobile and Manufactured Home Act and, as a result, both standards 2 and 5 are valid and enforceable.
Plaintiffs further argue that they are burdened since they cannot get full value for the home because it must be moved, and that there are few mobile parks that will accept "used" mobile homes. The defendants correctly assert the position that the plaintiffs are merely tenants leasing the land and, absent any evidence that there is a lifetime lease between the parties, have no legal right to leave the home on the land. Although this Court can sympathize with the plaintiffs' situation, there is no basis in law that would force the defendants to keep the plaintiffs' mobile home in Parkside.
The final argument set forth by the plaintiffs is that a large majority of the homes in Parkside do not comply with either standard. While this may be true, it is irrelevant since none of the other homes are being sold. The Parkside Rules and Regulations make it clear and the defendants support the rule that the new standards will not apply to homes that are already in Parkside. In fact, plaintiffs, without ever having to comply with Standards 2 and 5, may stay in their mobile home until they die. It is only upon the sale of these mobile homes that the plaintiffs and other residents would have to be in full compliance with all of the standards for the homes to remain.
The defendants at bar are merely implementing reasonable methods to maintain and improve their park. If such standards were not allowed to be implemented upon the sale of the homes, the defendants would be forced to wait until such time as all the homes in the park were sold to make improvements. Forcing the owners to wait until such time as all the homes were sold would be an unreasonable restraint of the defendant's rights incident to the ownership of Parkside.
The defendant's right to require removal of mobile homes from the park is enunciated in Rhode Island General Laws 1956 (1982 Reenactment) § 31-44-4, which provides in pertinent part:
 (a) No owner of a mobile or manufactured home shall . . . require [a] resident to remove [his] mobile and manufactured home because of the sale of the home, except as provided herein.
 . . .
 (f) [A park] owner may refuse to . . . allow a mobile and manufactured home to remain in the park . . . for good cause. For the purpose of this section, good cause means a reasonable cause for the owner to believe:
 . . .
 (4) an owner may require the removal of a mobile home being sold whose age and condition does not meet the standards of mobile homes in the park.
Since the plaintiffs' mobile home at the time of sale will not comply with the valid standards for mobile and manufactured homes in Parkside, the defendants may properly refuse to allow the home to remain.
For the reasons hereinabove set out, this Court pursuant to Rhode Island General Laws 1956 (1985 Reenactment) § 9-30-1, et. seq. declares that Standards 2 and 5 of the Parkside Rules and Regulations are reasonable and within the scope of standards permitted for mobile and manufactured homes as defined by the Rhode Island Mobile and Manufactured Homes Act. The plaintiffs' request for injunctive relief is hereby denied.
Counsel shall prepare and submit for approval an order consistent with this decision.